# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 4:20-CR-210-JAR-SPM** |
| **v.** | ) | |
| | ) | |
| **ROBERT LEWIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>DEFENDANT'S MOTION TO COMPEL</u>

Defendant Robert Lewis ("Lewis"), by and through undersigned counsel, respectfully requests that this Court enter an Order compelling the Government to produce to Lewis all discovery related to a group text message thread between five St. Louis Metropolitan Police Department ("SLMPD") police officers including Officer Christopher Narez, one of only two officers involved in the arrest of Lewis.

Specifically, Lewis seeks a copy of a group text message thread between SLMPD Officers Christopher Narez, Dustin Boone, Timothy Strain, Marcus Biggins, Shawn Griggs, and (f/n/u) McInerny, in which the five officers exchanged tales of police misconduct, expressed extreme and brazen racism, and demonstrated a callous disregard of their code of ethics as law enforcement officers. This text message exchange—which pre-dated Narez's involvement in the Lewis case—was never disclosed by the Government, nor did the Government make the defense aware of its existence while relying on Narez's hearsay statements at the suppression hearing in this case. Lewis also seeks any other discovery that speaks to Narez's demonstrated bias, motive, eagerness to assault suspects, racism, and/or dishonesty.[1]

---

[1] To be clear, this does not replace Lewis's request for *all* Brady, Giglio, Rule 16, and Jencks discovery.

Upon learning that this written record of police misconduct, racism, and excessive force exists and that it involves one of the two arresting officers in his case, Lewis—through undersigned counsel—expressly requested this discovery from the Government in writing on June 25, 2021. In addition to requesting the discovery, Lewis explained to the Government why he is legally and constitutionally entitled to it and has corresponded with counsel for the Government in an attempt to obtain this discovery without the need for this Court to intervene. Toward that end, after the recent *Frye* hearing and status conference in this case, the defense expressly asked whether the Government would disclose this discovery in the absence of a court order; the Government indicated it would not.

 Thus, because the Government refuses to produce this discovery (despite having this requested discovery in its possession), Lewis is left with no option but to move this Court to enter an order compelling its disclosure.

## I.    Relevant Background

On April 1, 2020, Lewis was charged in an indictment with one count of being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). (Doc. 1). Lewis has pleaded not guilty.

On August 17, 2020, Lewis requested discovery in writing and expressly requested, among other things:

> The prior criminal record of any person(s) the Government intends or expects to call as a witness at trial and any information that could be used by Defendant to impeach any witness the Government intends to call as a witness at trial; [and]

> Material of any kind whatsoever bearing upon the guilt or innocence of Defendant, or upon the credibility of any witnesses or the reliability or authenticity of any tangible evidence.

Government counsel acknowledged receipt of this discovery request and produced certain

discovery to Lewis.

Thereafter, the parties engaged in motion practice including, but not limited to, a motion to suppress, filed on December 11, 2020. (Doc. 30). Stated succinctly, the motion was generally premised on the notion that, *inter alia*, law enforcement lacked any reasonable suspicion or probable cause to approach Lewis as he stood on the sidewalk in front of his home and, therefore, had no basis to chase him and "drive-stun" him with a taser for several seconds until these two officers—including Narez—claim Lewis allegedly dropped a firearm. (*See id*.). On December 23, 2020, the Government responded in opposition (Doc. 35), and on February 16, 2021, an evidentiary hearing was held before this Court. (Doc. 42). At the hearing, three of the four SLMPD officers involved in the arrest of Lewis testified; the only officer involved in the arrest who did not testify was Narez. At the hearing, the Government elicited statements by Narez into evidence over Lewis' express objection on hearsay and Confrontation Clause grounds. At the time these issues arose at the hearing, the Government did not disclose that it had a text message exchange involving Narez in which several SLMPD officers bragged about assaulting black people with tasers and used disturbingly racist language.

Following the hearing, Lewis submitted a post-evidentiary hearing brief (Doc. 50) and the Government responded in opposition. (Doc. 52). In its response, the Government criticized Lewis for "insinuating, without an evidentiary basis, that Detective McCool and the other officers engaged in a racist plot to 'deliberate[ly] violate his constitutional rights.[']" (Doc. 52 at 17).

On April 30, 2021, the magistrate issued its Report and Recommendation ("R&R") recommending that Lewis' motion to suppress be denied. (Doc. 54). On June 4, 2021, Lewis filed objections to the R&R (Doc. 60) and on June 15, 2021, the Government filed a response to Lewis' objections. (Doc. 61). On June 17, 2021, this Court entered an Order adopting the R&R and

denying Lewis' motion to suppress. (Doc. 62). This Court then set this matter for a jury trial. (*Id.*).

In preparing for trial, it came to the defense's attention that SLMPD Officer Narez had participated in a group text message exchange with certain police officers—including former SLMPD Officer Dustin Boone who was recently convicted, following a jury trial prosecuted by the United States Attorney's Office for the Eastern District of Missouri (the "USAO"), of depriving an individual of his constitutional rights. *See United States v. Boone et al.*, 4:18-CR-975-CDP (E.D. Mo.). The defense only became aware of these text messages because the *Boone* case generated significant media publicity and Google searches revealed Narez's involvement. This is not how discovery is supposed to work.

The text messages sent to the group include, among other things, overt and shocking racism, and atrocious descriptions concerning the use of excessive force and humiliation against individuals targeted by law enforcement in the City of St. Louis. The defense only has access to a limited sampling of text messages included in pleadings in *Boone* as the Government has refused to disclose any text messages whatsoever to Lewis in this case. Those text messages exchanged by this small group of five SLMPD officers—including Narez—are disturbing.

In this case, Narez was one of the two police officers who allegedly pursued Lewis, tased him, and who claim to have witnessed him possess the alleged firearm at the heart of this case. While he did not testify at the suppression hearing in Lewis' case, Narez's involvement in this case was detailed by the officers who did testify as Government witnesses and this Court permitted the Government to elicit hearsay statements by Narez over the defense's repeated and adamant objections.

Specifically, Officer Blake Moe testified that the investigation into the alleged drug house at issue in this case began with Narez. *See* Evid. Hr. Tr. at 13. In particular, Moe testified that

4

Narez conducted a traffic stop which led to information about the house. *See id*. Following Narez's traffic stop, this alleged drug house became the target of law enforcement surveillance. *Id.* at 14.

Significantly, during the hearing, the defense objected to testimony elicited by the Government concerning Narez's statements and descriptions on both hearsay and Confrontation Clause grounds. *Id*. Nonetheless, over the defense's objections, Narez's statements were introduced into evidence. *Id.* at 14-15.

Subsequently, Detective Joshua McCool testified that he and Narez were the only two officers present when Lewis allegedly fell to the ground, was "drive-stunned" with a taser for several seconds, and allegedly dropped a firearm. *Id.* at 125-27.

In its recent successful prosecution of former SLMPD Officer Boone, the USAO filed a Notice of Intent to Use Additional Inextricably Intertwined Evidence and/or Rule 404(b) Evidence, Rule 804(b)(5) Evidence, and [REDACTED]. *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1). In the Notice, the USAO quoted portions of the group text message thread between SLMPD Officers Narez, Boone, Strain, Biggins, Griggs, and McInerny. *See id.* Specifically, on April 19, 2017, Dustin Boone sent a text message to the group stating:

> Dude caught a tampering 1st, resisting, stealing of a motor vehicle out of the county and a TASER to the fuckin dome? Other one was just a body shot. Caught him in some THICK over grow in a side vacant lot, there was nobody around except me. Shaw, shithead and god... he is at the hospital now... poor guy.

*Id.* Officer Griggs responded, "Thats fuckin hilarious! Strong Work!" *Id.* Former Officer Boone then recounted:

> Hahaha we made him tell the other officers on scene that he is a pussy! Hahaha he was puking on himself while EMS was looking at him and saying "I'm a pussy, in a pussy." And crying...... it was the greatest moment of my short career! Lol.

*Id.* Three months later, in the same group text message thread, former Officer Boone stated:

It's already a state of emergency! There r n******[2] running wild all across the city and even if/when we catch them..... they don't get in any trouble because there are plate lips running the CAO!

*Id.*

In the Notice—which was filed on May 6, 2021—the USAO took the position that these text messages are both direct evidence of a police officer's intentional violation of a suspect's constitutional rights and are "probative of his intent and motive to assault protesters and are against his code of ethics as a law enforcement officer," are admissible to show "animosity towards African American[s]," and are admissible to show that Boone's actions "were not as the result of mistake or accident." *Id.*

On June 25, 2021, Lewis made a formal written request to the Government to provide a copy of the group text message thread, explaining that it is discoverable pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) because it is material, exculpatory, and impeaches the credibility of Narez, a potential trial witness and one of only two Government witnesses who claim to have witnessed Lewis in possession of a firearm as alleged in the indictment.

Specifically, the text messages between Narez and his colleagues are "probative of intent and motive to assault," are "against his code of ethics as a law enforcement officer," are admissible to show his "animosity towards African American[s]," and are admissible to demonstrate that Narez's actions "were not the result of mistake or accident." *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1) (Government, by and through the same U.S. Attorney's Office prosecuting this case, arguing that this exact same group text message thread was admissible for these purposes with respect to Defendant Boone). To be clear, upon review of this not-yet-

---

[2] To be clear, this is a redaction. The actual text message contained a word that need not be repeated here but that demonstrates these officers' blatant and disgusting racism.

disclosed discovery, the defense may discover additional grounds through which these text messages are admissible at Lewis' trial. And the defense suspects there are text message statements by Narez that, when considered in context of the entire dialogue, make Narez's willingness to target black people and to violate their civil rights in violation of federal law even more obvious. Indeed, even if Narez did not actively participate in these communications and sat completely silently, Narez's mere presence on this racist and violent text message exchange, which involved only police officers, coupled with his willingness to look the other way when officers violated federal law, is probative of his bias, motive, credibility, and conduct as a law enforcement officer.

On June 30, 2021, the Government emailed undersigned counsel explaining that it had reviewed the text messages requested by Lewis and that the prosecution had concluded that they do not constitute *Giglio*, *Brady*, or Rule 16 material. However, the Government represented that it intends to seek *in camera* review by this Court of only three of the text messages—out of a months' long text message thread—to determine whether the three particular messages should be disclosed to Lewis.

The Government's position is surprising and outright unjustifiable, given that less than two months ago, in *Boone*, the Government took the position that these text messages are direct evidence of a police officer's intentional violation of a suspect's constitutional rights, are "probative of his intent and motive to assault protesters and are against his code of ethics as a law enforcement officer," are admissible to show "animosity towards African American[s]," and are admissible to show that Boone's actions "were not as the result of mistake or accident." *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1). In *Boone*, the Government introduced this evidence through the testimony of an AUSA employed by the same U.S. Attorney's Office prosecuting this case.

7

## II.    Discussion

These disturbing text messages which include an arresting officer in this case are discoverable under *Brady* and *Giglio* even in the absence of a request by the defense. They should have been turned over at the outset of this case or, at a minimum, when the Government became aware of them in the context of the *Boone* prosecution. Nevertheless, in the defense's initial discovery letter, Lewis expressly requested disclosure of *Brady* and *Giglio* in advance of any pretrial hearing (a specific discovery request the Government has flat-out ignored) and he has expressly requested this specific discovery now that he is aware of its existence.

Evidence that Narez was a participant in a months-long (at a minimum) group text message exchange in which five SLMPD officers exchanged tales of misconduct, extreme and brazen racism, and demonstrated a callous disregard of their code of ethics as law enforcement officers is unambiguously discoverable as it could be used to impeach the credibility of at least one witness to the allegations at issue in this case and tends to exculpate Lewis of the charge against him because it demonstrates this particular police officer's racist motives and willingness to laugh about disgusting violations of civil rights in violation of federal law.

But it is important for this Court to recognize that at this stage—where the Government has already relied on Narez as a hearsay declarant against Lewis—this Court's analysis does not even need to go that far. This is because, under Federal Rule of Evidence 806, "[w]hen a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or (E)—has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." The record from the suppression hearing, which this Court has already reviewed *de novo*, reveals in no uncertain terms that Narez's hearsay statements were admitted at the suppression hearing over Lewis'

8

repeated and adamant objections and, therefore, Narez's credibility was directly at issue. *See, e.g.,* Evid. Hr. Tr. at 15 ("I learned of it when Officer Narez and his partner made an unrelated, just an everyday traffic stop. *He told me* that they learned of a house near Pennsylvania and Potomac that was involved in narcotic sales relative to that traffic stop") (emphasis added). As such, Lewis should have had the opportunity to impeach Narez's credibility by referencing his participation in a racist and violent group text message exchange in which a small group of five SLMPD officers bragged about tasing black people, like Lewis, and forcing them to undergo extreme pain and humiliation for no valid law enforcement purpose—all in violation of federal law. But the Government did not disclose this *Brady* and *Giglio* evidence in advance of the suppression hearing—and Lewis had no way of knowing that Narez had participated in such appalling communications with other officers, at least one of whom is now a convicted felon. The Government cannot, with a straight face, argue this evidence is probative in a prosecution against former SLMPD officer Boone while arguing this evidence is not even discoverable when Lewis, a black man targeted on the sidewalk in front of his own home by one of these racist officers willing to violate the rights of suspects and then laugh about it, requests it. That the Government would even attempt to have it both ways is as telling as it is disappointing.[3] This Court should see right through the Government's totally inconsistent positions.

The Government has an affirmative obligation to learn of, and disclose, this type of evidence. *See United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016) ("Because '[a] prosecutor has a duty to disclose evidence known by police officers, even if not known by the prosecutor,' a prosecutor has an attendant duty to learn of such evidence") (quoting *United States*

---

[3] In its discovery request for these text messages, the defense went out of its way to acknowledge the Government's transparency with discovery in other respects in this case. The defense is stunned the Government would resist turning these text messages over, all apparently in an effort to hide the overt racism of five police officers, including the arresting officer in this case, and their willingness to violate federal law by targeting black suspects like Lewis.

*v. Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008)). *See also Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable") (internal citation to *Brady* omitted).

Here, the defense has made clear that, from Lewis' perspective, the conduct of the police toward Lewis was motivated, at least in part, by racism. And in its brief, the Government criticized Lewis' position in this respect, stating, "[h]owever, Defendant takes it one disturbing step further by insinuating, without an evidentiary basis, that Detective McCool and the other officers engaged in a racist plot to 'deliberate[ly] violate his constitutional rights.[']" (Doc. 52 at 17). However, as the Government lodged this criticism, it turns out the prosecution had in its possession, custody, and control an independent evidentiary basis that supports Lewis' theory—but hid it from Lewis while criticizing him for failing to have it. In fact, the USAO was actively using this same evidence in support of a nearly identical theory in its prosecution of former SLMPD Officer Boone (who was on this disturbing text message chain with Narez and only three other SLMPD officers).

Until he has an opportunity to review this abhorrent text message thread, Lewis and this Court cannot comprehensively determine the extent to which this evidence is impeachment or exculpatory. However, regardless of which category it falls into, Lewis is constitutionally entitled to review it and the Government has no right to hide it from him. This is true regardless, but also because the Government has already injected Narez's credibility into the suppression hearing in this case—all while hiding from the defense and from this Court that its arresting officer has a

documented history of racism and unlawfully targeting black suspects in cases involving tasers. How much more on point could this evidence possibly be in attacking this hearsay declarant's credibility?

Indeed, the defense has an obligation to fully investigate this new evidence, to locate any additional missing evidence, to pursue any investigative leads uncovered as a result, and to prepare and file any necessary motions triggered by this previously-undisclosed evidence and any further evidence revealed as a consequence. But until this discovery is produced, the defense is unable to accomplish these constitutionally-mandated tasks.

To be clear, the defense only knows of these disturbing text messages involving Narez because excerpts of the messages appeared in news articles discussing the fact that the USAO was seeking to utilize the text messages in its prosecution of former SLMPD Officer Boone. Indeed, in *Boone*, the Government elicited certain text messages from this same text message exchange through the testimony of an AUSA in this district. And yet in Lewis, the Government is refusing to disclose these text messages to the defense. The Government should not be permitted to have it both ways. When this exact evidence was useful in the Government's theory of prosecution of Boone, the Government argued stridently for its admission. *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1). However, now that this evidence is useful to a criminal defendant in defending against the Government's allegations, the Government is taking the entirely inconsistent position that this evidence is not discoverable. This Court should not tolerate this hypocrisy. And the law prevents the Government from taking two totally inconsistent positions in this respect.

Indeed, Lewis is expressly asking this Court to conclude that the Government is judicially estopped from changing course in this manner. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel "prohibit[s] parties from deliberately changing positions according

to the exigencies of the moment" (quoting *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993)). As the Supreme Court emphasized, "[The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 99 (1935); *see also Green v. Georgia*, 442 U.S. 95 (1979) (rejecting prosecutor's attempt to use hearsay rules to prevent defendant from presenting evidence that the prosecutor previously used to convict another defendant of the same crime); *Miller v. Pate*, 386 U.S. 1 (1967) (condemning prosecutor's use of inconsistent theories in a case involving a prosecutor's knowing use of false testimony). Based on the Government's position in *Boone* as to the evidentiary value of these text messages, the prosecution should be estopped in this case from advancing an inconsistent theory.

As it stands, this discovery has never been provided to Lewis. In preparing for trial and in protecting Lewis' constitutional rights, it is frustrating that the defense had to happen upon these text messages from an unrelated case and even upon an express and detailed discovery request, that the Government did not immediately disclose this discovery to Lewis. As such, Lewis has no choice but to seek an order to compel and the law clearly requires the disclosure of this evidence to the defense. To be clear, the Government's apparent plan to disclose only a handful of these text messages to this Court for an *in camera* review is insufficient, will fail to provide necessary context, legally misses the mark entirely that this was and is discoverable in light of the admission of Narez's statements at the suppression hearing, and deprives Lewis of his right to access this unambiguously probative evidence. And any position to the contrary should be judicially estopped based on binding precedent.

Following the *Boone* verdict after the Government relied heavily on the same text message exchange that is at issue in this motion, the lead prosecutor said to the media, "For those of us in law enforcement, it's gratifying that we can take a bad cop off the streets."[4] Yet in Lewis, the Government is going to extremes to hide this racist text message exchange among five SLMPD police officers from the defense even though it involved Narez.

The bottom line is this: Lewis is legally and constitutionally entitled to this evidence and this Court should compel the Government to disclose it without any further delay.

## III.    Conclusion

Based on the foregoing, Lewis respectfully requests that this Court enter an Order requiring the Government to produce a copy of the above-referenced group text message thread and any other discovery that speaks to Officer Narez's demonstrated bias, motive, eagerness to assault suspects, racism, and/or dishonesty. This should have been disclosed in advance of the suppression hearing so that Lewis could impeach the credibility of hearsay declarant Narez and so that Lewis could have further established an evidentiary basis for what transpired in this case, but, in any event, this discovery needs to be disclosed now so that Lewis can evaluate it, follow up as appropriate, and have the benefit of access to the discovery to mount a defense at trial.

---

[4] *See* Robert Patrick, "Jury Convicts Former St. Louis Cop for Role in Colleague's Beating, Undecided on Another," available at https://www.stltoday.com/news/local/crime-and-courts/jury-convicts-former-st-louis-cop-for-role-in-colleagues-beating-undecided-on-another/article_bf3ed702-ac0a-506f-8f63-028a5d7a2d40.html (last accessed July 2, 2021).

Respectfully submitted,

**Margulis Gelfand, LLC**

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND
ATTORNEY FOR LEWIS
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com

14

**<u>Certificate of Service</u>**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by email upon counsel for the United States of America.

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND
ATTORNEY FOR DEFENDANT
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com