UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CR 210 JAR |
| | ) | |
| ROBERT LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' *EX PARTE* MOTION FOR *IN CAMERA* REVIEW OF MATERIALS RELATING TO POTENTIAL IMPEACHMENT OF AN OFFICER WHO WILL NOT BE CALLED AS A GOVERNMENT WITNESS**

Comes now the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Angie E. Danis, Assistant United States Attorney for said District, and in support of its *ex parte* motion for an *in camera* review of potentially impeaching information regarding an officer who will not be a called as a Government witness states as follows:

Defendant Lewis is charged with being a felon in possession of a firearm on February 16, 2020. The events underlying the charges include an encounter between Lewis and law enforcement officers, which included SLMPD Officers Josh McCool, Christopher Narez, Blake Moe, and Matthew Shoults on February 16, 2020. The officers were conducting an evening patrol in the Gravois Park neighborhood of St. Louis, MO, in multiple vehicles, when Officer Shoults observed suspicious activity at a known suspected drug house. (Evidentiary Hearing Transcript, Doc. #46 at 84-85). The house itself was the subject of an ongoing narcotics investigation involving Officers Moe, Narez, and Shoults. *Id*. at 16-20, 82-83.

1

Officer Shoults was in an unmarked vehicle when he observed a group of four individuals loitering in the vicinity of the home on February 16, 2020.  *Id*. at 84-85.  He radioed his observations to Officers Moe, McCool, and Narez.  *Id*. at 85-86.  The officers discussed these observations and confirmed that this activity was consistent with previous suspected drug activity observed at this house by Officers Moe, Narez, and Shoults.  *Id*. at 85-87.  Officer Shoults briefly lost sight of the four individuals, but saw them again approximately one block from the drug house.  *Id*. at 87-89.  Shoults radioed this update to Officers Narez, Moe, and McCool, who immediately made their way to this new location.  *Id*. at 89-90.

Officers Narez, Moe, and McCool approached the group of four individuals, which included Lewis, and asked them to speak to them.  *Id*. at 122-23.  Only Lewis immediately fled from officers.  *Id*. at 123-24.  Officers Narez and McCool pursued Lewis on foot through several backyards.  *Id*. at 125-26.  Lewis fell to the ground, and lay prone on the ground with his hands under his torso.  *Id*. at 126.  Officers McCool and Narez ordered him to show his hands, but Lewis refused.  *Id*. at 125-26.  Officer McCool advised Lewis he would be "tased" if he did not comply, and when Lewis continued to refuse, Officer McCool administered a "drive-stun" with his taser.  *Id*. at 126.  Lewis then immediately revealed his hands, and at the same time threw a firearm away from his person.  Id. at 127.  Officer McCool then took Lewis into custody and the firearm was seized.  *Id*.

Lewis filed a motion to suppress evidence.  (Doc. #30). Officer Narez was not called as a witness at the suppression hearing and the Government does not intend to call him as a witness at trial. At the hearing, Officer Moe testified that he learned of this suspected drug house when Officer Narez informed Officer Moe that he (Narez) became aware of the house after making a

traffic stop on an individual with knowledge of narcotics sales taking place at the home. (Doc. #46 at 13-15). This initial information lead to subsequent proactive investigation and surveillance conducted by Officers Moe, Narez, and Shoults over the next several months. *Id*. at 15.

Counsel for defendant Lewis made a discovery request of the United States for arguably impeaching information related to Officer Narez on or about June 25, 2021, with another email request sent on June 29, 2021. Specifically, the defense requested that the Government "disclose a copy of the group text message threat between SLMPD Officers Narez, Boone, Strain, Biggins, Griggs, and McInerny and any other discovery that speaks to Narez's bias, motive, eagerness to assault suspects, racism, and/or dishonesty." Defendant asserts that this evidence is discoverable pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and due to the fact that it is material to the preparation of their defense. Defense counsel learned of the existence of the requested group text messages involving non-witness Narez as a result of the recent federal criminal civil rights trial of former SLMPD Officer Dustin Boone in *United States v. Dustin Boone, et al.*, 4:18-CR-000975. On June 30, 2021, counsel for the Government responded that it had reviewed the text messages and planned to request that several of them be reviewed *in camera*, although it was the Government's position at the time that they did not constitute *Giglio*, *Brady*, or Rule 16 material to the preparation of any valid defense.

The undersigned counsel obtained the group text messages at issue from counsel for the Government in *United States v. Boone, et al.* S1-4:18-CR-000975 and has reviewed same multiple times. The group text messages are attached hereto as Exhibit 1. Therein, St. Louis Metropolitan Police Department (SLMPD) Officer Christopher Narez was included in a "group chat." Despite the fact that Officer Narez will not be called as a government witness at any stage of the case, the

3

United States now believes it would be appropriate to turn over to the defense limited excerpts of the attached exhibit which could arguably be used to attempt to establish some bias against African-Americans. The excerpts have been highlighted in green and appear as follows:

-page 18, lines 175-76

-page 44, line 437 through page 46, line 451

-page 50, line 494-496

-page 85, line 828 through page 87, line 847

-page 122, line 1164 through page 123, line 1172

The United States does not believe that the remainder of the group text messages are subject to disclosure to the defense pursuant to *Brady*, *Giglio*, or Federal Rule of Evidence 16. It is the Government's position that the remaining content does not constitute proper impeachment (as Narez is not testifying for the Government), is not favorable to the defendant, and due to their remoteness in time and lack of relation to the instant case, are not in any way relevant to the issues at trial.

The Government does not believe the remainder of the group texts to be evidence material to the preparation of any valid defense, especially given the remoteness of time the text threads. The text threads that the Government are submitting occurred between January 23, 2016 and December 14, 2017. The events giving rise to the instant charges against Robert Lewis occurred on February 16, 2020.  However, in an abundance of caution, the United States is submitting the text thread, with Narez's messages highlighted in yellow, to the Court *in camera* to ensure it agrees with that determination.   Accordingly, the United States moves for *ex parte*, *in camera* review by this Court and a determination that these messages (except for the ones highlighted in green) need

4

not be disclosed to counsel for the defense. The Supreme Court has indicated that such a review by the Court is permissible.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60-61 (1986) (ordering *in camera* review of juvenile records by court).

Additionally, since Officer Narez has a genuine and understandable concern that potential impeachment information relating to him could harm his reputation if not properly handled, the Government requests that the messages it plans to disclose to the defense be subject to a protective order as outlined below. Moreover, in the event the Court disagrees with the United States' conclusion that those are the only messages subject to disclosure and orders that additional message be furnished, the Government requests that disclosure also occur pursuant to a protective order.

**Legal Standards**

"Under *Giglio*, 'the government must disclose matters that affect the credibility of prosecution witnesses.'" *United States v. Huggans*, 650 F.3d 1210, 1226 n.8 (8th Cir. 2011) (quoting *United States v. Morton*, 412 F.3d 901, 906 (8th Cir. 2005)). Here, the text messages described are not that of a Government witness as Narez did not and will not testify. To the extent a hearsay statement of Narez's was admitted at the hearing into this matter, none of the statements in the text messages would be relevant impeachment. Many are statements by other officers or are not relevant impeachment to the particular hearsay statement made by Narez here.

Moreover, under Rule 403 of the Federal Rules of Evidence, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." *Firemen's Fund Insurance Co. v. Thien*, 63 F.3d

5

754, 760 (8th Cir. 1995) (citing Rule 403).

The United States does not believe that the text messages addressed herein constitute *Brady*, *Giglio*, impeachment, or Rule 16 material, nor are they admissible or relevant in any way to the issues at trial. In an abundance of caution, the Government intends to turn over the limited portions that could potentially relate to a bias against African Americans; however, that would not be proper, admissible impeachment of the hearsay statement at issue.

The United States seeks a ruling from this Court that the remaining text messages need not be disclosed to the defense under any of the Government's obligations.

**Government's Obligation to Provide "Favorable Information"**

Before trial, the Government must disclose evidence favorable to the defendant that, if suppressed, would deprive the accused of a fair trial. *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963); *United States v. Bagley*, 473 U.S. 667, 674-75 (1985). This duty extends both to exculpatory evidence and to evidence that might be used to impeach the Government's witnesses. *Bagley*, 473 U.S. at 676; *Giglio v. United States*, 405 U.S. 150, 153-54 (1972).

The Constitutional underpinning for the Government's obligation to disclose impeachment information to the defense is the Right to a Fair Trial found in the Due Process clause of the Fifth Amendment of the United States Constitution (the Fourteenth Amendment extends the Due Process clause to the states). *See, e.g. Bagley*, 473 U.S. at 675; *Brady*, 373 U.S. at 86; *Giglio*, 405 U.S. at 153-54; *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). Accordingly, courts applying *Giglio* have focused on a defendant's right to receive favorable information in the Government's possession in sufficient time to make effective use of it at trial. *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003). The Supreme Court has noted that the Government has no *Brady*

6

obligation to "communicate preliminary, challenged, or speculative information." *United States v. Agurs*, 427 U.S. 97, 109 n. 16 (1976) (citing *Giles v. Maryland*, 386 U.S. 66, 98 (1967)); *Fernandez v. Capra*, 2014 WL 5039433 (S.D.N.Y. 2014).

The text messages attached do not prove that the defendant did not commit the crime charged or substantiate any valid defense, nor does it bear on the credibility of any witness.

**Relevance to Issues at Trial**

For evidence to be admissible under Federal Rule of Evidence 402, it must be relevant to a fact of consequence in the trial.  Evidence is relevant if: (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of consequence in determining the action. Fed.R.Evid. 401. A "fact of consequence" is not anything the defense would like to prove to gain an acquittal of the defendant. It is limited to such matters as valid defenses, proof regarding an element of a charged offense, and the credibility of witnesses.

> In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged.

*Williams v. People of State of N.Y.*, 337 U.S. 241, 246–47 (1949). *See also United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013) (evidence was relevant and thus admissible because it tended to prove the defendant possessed and distributed narcotics on a date charged in the indictment); *United States v. Wilk*, 572 F.3d 1229, 1235 (11th Cir. 2009)(district court did not abuse its discretion by excluding evidence the defendant sought to offer which did not support a valid defense); *United States v. Waldrip*, 981 F.2d 799, 806–07 (5th Cir. 1993)(to be relevant under Fed.R.Evid. 401, "the matter sought to be proved must be part of the hypothesis governing the case.").

In a criminal case, the governing hypothesis consists of the elements of the offense charged and the relevant defenses (if any) raised to defeat criminal liability. *United States v. McCorkle*, 688 F.3d 518, 521 (8th Cir. 2012)("In determining the relevancy of the evidence at issue in this case, we first look to what elements must be proven under the statute of conviction."); *United States v. Henthorn*, 864 F.3d 1241, 1249 (10th Cir. 2017) ("Relevant evidence tends to make a necessary element of an offense more or less probable.") (citation omitted); *United States v. Ajayi*, 808 F.3d 1113, 1121 (7th Cir. 2015) (holding that district court did not abuse its discretion in excluding emails because they had no connection to the crime.).

The text messages do not have any tendency to disprove the elements of the charged offense, nor do they support a valid defense in this case.

**Possible Legal Bases for Cross-Examination**

Not all witness or law enforcement agent misconduct is relevant or admissible for impeachment purposes. *Brady*, *Giglio*, and their progeny require the Government to disclose materially favorable information to the defense. Here, it is the Government's position that none of the messages described herein are materially favorable, nor is it impeaching of Government witness's testimony as Officer Narez will not be called by the Government.

In assessing any impeachment value of the information—including to the hearsay statement of Narez admitted at the hearing—its admissibility is relevant and courts must look to the Federal Rules of Evidence and case law that define the bounds of admissible impeachment and proper cross-examination. Courts should limit impeachment during court proceedings to matters relating to competency, truthfulness, bias, ability to perceive and recall, and contradiction as set forth in the Federal Rules of Evidence and the case law. More specifically, a witness's credibility

8

may be called into question in several ways, including:

- Under FRE 608(a) with opinion and reputation evidence about the witness's character for truthfulness;

- Under FRE 608(b) with specific instances of conduct probative of the witness's character for truthfulness;

- Under FRE 609 with certain felony convictions;

- Under FRE 613 with inconsistent statements;

- Under Supreme Court rulings, a witness's credibility may also be attacked on bias grounds. "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *United States v. Abel*, 469 U.S. 45, 52 (1984). "The partiality of a witness is subject to exploration at trial and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

- By contradicting the substance of the witness's testimony. "A witness may be contradicted on a material point by the testimony of other witnesses showing a contrary state of facts, in order to show that his statements were false and thus impeach his credibility." *United States v. Halperin*, 441 F.2d 612, 617 (5th Cir. 1971). *See also United States v. Plotke*, 725 F.2d 1303, 1309 (11th Cir. 1984); and *United States v. Stephens*, 779 F.2d 232, 240–41 (5th Cir. 1985)(permissible to cross a witness with other contradictory evidence admitted in the trial).

- Finally, by questioning the witness's ability to perceive and recall the facts and events that are the subject of a hearing or trial.

It is the United States' belief that none of the information described herein would be proper impeachment of Officer Narez's limited hearsay statement.

**Conclusion and Alternative Request for Protective Order**

For the foregoing reasons, the United States believes that all but the previously specified text messages attached hereto need not be disclosed to defense counsel in that they are not exculpatory, are remote in time compared to the events at issue in this case, not probative of

9

truthfulness, and completely irrelevant to defendant's guilt here. Additionally, they are not proper impeachment materials required to be disclosed under *Giglio v. United States*, 405 U.S. 150 (1972).

The Government further requests that the specified text messages the Government has chosen to disclose (highlighted in green) be subject to a protective order. Additionally, if the Court disagrees with the Government's assessment herein that the remaining text messages need not be disclosed to the defense, the Government requests that any ordered disclosure be subject to the following protective measures: (a) defendant and defense counsel be prohibited from disclosing the information to anyone other than the defendant and the Court; (b) should defendant or defense counsel need to file any motion, pleading, or other notice referencing any information in this document, defendant and defense counsel shall be required to file any such document under seal; (c) defense counsel be prohibited from leaving a copy of any pleading that contains a description of the text messages with the defendant; and (e) upon termination of this action and any appeal, or at the conclusion of counsel's representation of the defendant, whichever occurs first, counsel for the defendant shall return the document to the Government or shall certify that said materials have been destroyed.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Angie E. Danis*
ANGIE E. DANIS, #64805MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
(314) 539-2200

10

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 16, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system and sent via United States Mail to all counsel of record.

                                           */s/ Angie E. Danis*
                                           ANGIE E. DANIS, #64805MO
                                           Assistant United States Attorney