UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:20-CR-210-JAR-SPM |
| v. ) | |
| ) | |
| **ROBERT LEWIS,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR *IN CAMERA* REVIEW OF RACIST TEXT MESSAGES**

Defendant Robert Lewis ("Lewis"), by and through undersigned counsel, respectfully responds in opposition to the Government's motion (Doc. 74) for *in camera* review of a racist text message exchange between five St. Louis Metropolitan Police Department ("SLMPD") officers including Christopher Narez, one of only two possible witnesses (both SLMPD officers) who claim to have seen Lewis possess a firearm. Instead, this Court grant Lewis's motion to compel production of the text messages (Doc. 68) requiring that the Government produce to Lewis all discovery related to this racist group text message thread as it is unambiguously discoverable pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

The Government's attempt to hide this stunning text message exchange from Lewis is stunning. As has been set out in the relevant pleadings before this Court, Lewis seeks the complete group text message thread between SLMPD Officers Christopher Narez, Dustin Boone, Timothy Strain, Marcus Biggins, Shawn Griggs, and (f/n/u) McInerny, in which the five officers exchanged tales of police misconduct, expressed brazen and disgusting racism, and demonstrated a callous disregard of their code of ethics as law enforcement officers. Lewis also seeks any other discovery

that speaks to Officer Narez's demonstrated bias, motive, eagerness to assault suspects, racism, and/or dishonesty.

It is important not to lose sight of the fact that the Government hid this evidence from Lewis. The defense only learned about it by reading news coverage of the Boone case which this same U.S. Attorney's Office prosecuted, at which time Lewis expressly and repeatedly requested that the Government disclose this discovery. The Government repeatedly represented that it would not produce this requested discovery to Lewis—prompting Lewis to seek an order from this Court.

However, as a sealed exhibit to the Government's motion for *in camera* review—which this Court ordered the Government to file publicly after the Government initially filed it *ex parte* and under seal—the Government has finally provided Lewis with a small fraction of the text messages at issue. The total text message chain is 145 pages; the Government has provided portions of only 10 of those pages, most heavily redacted.

## I.   Relevant Background

On April 1, 2020, Lewis was charged in an indictment with one count of being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). (Doc. 1). Lewis has pleaded not guilty.

On August 17, 2020, Lewis requested discovery in writing and expressly requested, among other things:

> The prior criminal record of any person(s) the Government intends or expects to call as a witness at trial and any information that could be used by Defendant to impeach any witness the Government intends to call as a witness at trial; [and]
>
> Material of any kind whatsoever bearing upon the guilt or innocence of Defendant, or upon the credibility of any witnesses or the reliability or authenticity of any tangible evidence.

Government counsel acknowledged receipt of this discovery request and produced certain

discovery to Lewis.

Thereafter, the parties engaged in motion practice including, but not limited to, a motion to suppress, filed on December 11, 2020. (Doc. 30). Stated succinctly, the motion was generally premised on the notion that, *inter alia*, law enforcement lacked any reasonable suspicion or probable cause to approach Lewis as he stood on the street in front of his home and, therefore, the police had no basis to chase him and "drive-stun" him with a taser for several seconds until these two officers—including Narez—claim a firearm was allegedly dropped. (*See id.*). On December 23, 2020, the Government responded in opposition (Doc. 35), and on February 16, 2021, an evidentiary hearing was held before this Court. (Doc. 42). At the hearing, three of the four SLMPD officers involved in the arrest of Lewis testified—the only officer involved in the arrest who did not testify was Officer Narez. At the hearing, the Government introduced statements made by Narez into evidence over Lewis' express objection on hearsay and Confrontation Clause grounds. At the time these issues arose at the hearing, the Government had not disclosed that it had a 145-page text message exchange involving Narez in which several SLMPD officers bragged about assaulting black people with tasers, used disturbing racist language, and bragged about committing acts of shocking police misconduct and using excessive force against black people.

Following the hearing, Lewis submitted a post-evidentiary hearing brief (Doc. 50) and the Government responded in opposition. (Doc. 52). In its response, the Government criticized Lewis for "insinuating, without an evidentiary basis, that Detective McCool and the other officers engaged in a racist plot to 'deliberate[ly] violate his constitutional rights.[']" (Doc. 52 at 17).

On April 30, 2021, the magistrate judge issued her Report and Recommendation ("R&R") recommending that Lewis' motion to suppress be denied. (Doc. 54). On June 4, 2021, Lewis filed objections to the R&R (Doc. 60) and on June 15, 2021, the Government filed a response to Lewis'

objections. (Doc. 61). On June 17, 2021, this Court entered an Order adopting the R&R and denying Lewis' motion to suppress. (Doc. 62). This Court then set this matter for a jury trial. (*Id.*). In other words, throughout the entirety of the litigation of the motion to suppress, the Government hid from Lewis, the magistrate judge, and this Court that one of only two people on earth (both SLMPD officers) who claim to have seen Lewis commit the crime charged has shown himself in writing to be a racist police officer energized to commit crimes and discriminate against black people like Lewis.

In preparing for trial, it came to the defense's attention that SLMPD Officer Narez had participated in a group text message exchange with certain police officers—including former SLMPD Officer Dustin Boone who was recently convicted, following a jury trial prosecuted by the United States Attorney's Office for the Eastern District of Missouri (the "USAO"), of depriving an individual of his constitutional rights. *See United States v. Boone et al.*, 4:18-CR-975-CDP (E.D. Mo.). The defense only became aware of these text messages because the *Boone* case generated significant media publicity and news coverage revealed Narez's involvement. This is not how discovery in a criminal case is supposed to work.

The text messages include, among other things, overt racism and atrocious bragging about the use of excessive force and humiliation against individuals targeted by law enforcement in the City of St. Louis. The text messages are plainly disturbing.

In the present matter, Narez was one of the two police officers who allegedly pursued Lewis, tased him, and who claim to have witnessed him possess the alleged firearm at the heart of this case. While he did not testify at the suppression hearing in Lewis' case, Narez's involvement in this case was detailed by the officers who did testify as Government witnesses and hearsay statements by Narez were admitted over the defense's repeated and adamant objections.

4

Specifically, Officer Blake Moe testified that the investigation into the alleged drug house at issue in this case began with Narez. *See* Evid. Hr. Tr. at 13. In particular, Moe testified that Narez conducted a traffic stop which led to information about the house. *See id*. Following Narez's traffic stop, this alleged drug house became the target of law enforcement surveillance. *Id.* at 14.

Significantly, during the hearing, the defense objected to testimony elicited by the Government concerning Narez's statements and descriptions on both hearsay and Confrontation Clause grounds. *Id*. Nonetheless, over the defense's objections, Narez's statements were introduced into evidence. *Id.* at 14-15.

Subsequently, Detective Joshua McCool testified that he and Narez were the only two officers present when Lewis allegedly fell to the ground, was "drive-stunned" with a taser for several seconds, and allegedly dropped a firearm. *Id.* at 125-27.

In its recent successful prosecution of former SLMPD Officer Boone, the USAO filed a Notice of Intent to Use Additional Inextricably Intertwined Evidence and/or Rule 404(b) Evidence, Rule 804(b)(5) Evidence, and [REDACTED]. *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1). In the Notice, the USAO quoted portions of the group text message thread between SLMPD Officers Narez, Boone, Strain, Biggins, Griggs, and McInerny. *See id.* Specifically, on April 19, 2017, Dustin Boone sent a text message to the group stating:

> Dude caught a tampering 1st, resisting, stealing of a motor vehicle out of the county and a TASER to the fuckin dome? Other one was just a body shot. Caught him in some THICK over grow in a side vacant lot, there was nobody around except me. Shaw, shithead and god... he is at the hospital now... poor guy.

*Id.* Officer Griggs responded, "Thats fuckin hilarious! Strong Work!" *Id.* Former Officer Boone then recounted:

> Hahaha we made him tell the other officers on scene that he is a pussy! Hahaha he was puking on himself while EMS was looking at him and saying "I'm a pussy, in a pussy." And crying...... it was the greatest moment of my short career! Lol.

5

*Id.* Three months later, in the same group text message thread, former Officer Boone stated:

> It's already a state of emergency! There r n******[1] running wild all across the city and even if/when we catch them..... they don't get in any trouble because there are plate lips running the CAO!

*Id.*

In the Notice—which was filed on May 6, 2021—the USAO took the position that these text messages are both direct evidence of a police officer's intentional violation of a suspect's constitutional rights and are "probative of his intent and motive to assault protesters and are against his code of ethics as a law enforcement officer," are admissible to show "animosity towards African American[s]," and are admissible to show that Boone's actions "were not as the result of mistake or accident." *Id.*

On June 25, 2021, Lewis made a formal written request to the Government to provide a copy of the group text message thread, explaining that it is discoverable pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) because it is material, exculpatory, and impeaches the credibility of Narez, a potential trial witness and one of only two Government witnesses who claim to have witnessed Lewis in possession of a firearm as alleged in the indictment.

Specifically, the text messages between Narez and his colleagues are "probative of intent and motive to assault," are "against his code of ethics as a law enforcement officer," are admissible to show his "animosity towards African American[s]," and are admissible to demonstrate that Narez's actions "were not the result of mistake or accident." *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1) (same U.S. Attorney's Office arguing that this exact same group

---

[1] To be clear, this is a redaction. The actual text message contained a word that need not be repeated here but that demonstrates these officers' blatant and disgusting racism.

6

text message thread was admissible for these same purposes with respect to Defendant Boone). To be clear, upon review of this not-yet-disclosed discovery, the defense may discover additional grounds through which these text messages are admissible at Lewis' trial. And the defense suspects there are text message statements by Narez that, when considered in context of the entire dialogue, make Narez's willingness to target black people and to violate their civil rights in violation of federal law even more obvious. Indeed, even if Narez did not actively participate in these communications and sat completely silently, Narez's mere presence on this racist and violent text message exchange, which involved only police officers, coupled with his willingness to look the other way when officers violated federal law is probative of his bias, motive, and credibility.

On June 30, 2021, the Government emailed undersigned counsel explaining that it had reviewed the text messages requested by Lewis and had concluded that they do not constitute *Giglio*, *Brady*, or Rule 16 material. However, the Government represented that it intended to seek *in camera* review by this Court of only three of the messages—out of a months' long text message thread—to determine whether the three particular messages should be disclosed to Lewis.

The Government's position was surprising and unjustifiable, given that just a few months ago, in *Boone*, the Government took the position that these text messages are both direct evidence of a police officer's intentional violation of a suspect's constitutional rights and are "probative of his intent and motive to assault protesters and are against his code of ethics as a law enforcement officer," are admissible to show "animosity towards African American[s]," and are admissible to show that Boone's actions "were not as the result of mistake or accident." *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1).

On July 2, 2021, Lewis filed a motion to compel the Government to disclose all discovery related to a group text message thread between five St. Louis Metropolitan Police Department

7

("SLMPD") police officers including Officer Christopher Narez, one of only two officers involved in the arrest of Lewis. (Doc. 68).

Sometime thereafter, the Government filed an *ex parte* pleading with this Court (Doc. 69). And on July 14, 2021, the Government responded in opposition to Lewis' motion to compel. (Doc. 70).

On July 16, 2021—after becoming aware of its existence—Lewis filed a motion to compel disclosure of the Government's *ex parte* pleading. (Doc. 71). On July 29, 2021, the Government responded in opposition. (Doc. 72). On August 13, 2021, this Court ordered the Government to publicly file the *ex parte* motion with the relevant text messages attached as a sealed exhibit. (Doc. 73). The Government complied on August 16, 2021. (Doc. 74). The Government provided the defense with a sealed exhibit of the text messages—however, the exhibit consists of 145 pages with all but portions of 10 pages of the exhibit redacted. In its motion, the Government represents that it is willing to submit the entire text message thread to this Court "with Narez's messages highlighted in yellow" for an *in camera* review. (*Id.*).

**II.    Discussion**

The Government's motion for *in camera* review of these text messages provides this Court with no legally justifiable reason for granting it while denying Lewis's motion to compel the entirety of the text message exchange. The Government's legally unsound position boils down to this: (1) the racist text messages exchanged by Narez and his fellow officers concerning police misconduct and the brutal use of tasers to electrocute black people are not proper impeachment evidence because the Government is not going to call Narez to testify at trial (*see* Doc. 74 at 4); (2) the racist text messages are not favorable to Lewis (*See id.*); and (3) the racist text messages detailing the use of excessive force and coverups against black people are not relevant to Lewis'

8

trial because the texts were exchanged in 2016 and 2017 and Lewis was not tased and arrested until February 2020. (*See id.*). This Court should reject each of these meritless arguments.

> A. The Racist Text Messages Are Proper Impeachment Evidence Even if the Government Strategically Chooses Not to Call Narez as a Witness at Trial

The Government can choose not to call Narez as a witness in its case-in-chief, but the Government cannot avoid the fact that he will testify at trial—even if he is called by the defense. To that end, these text messages constitute proper impeachment evidence.

*First*, regardless of whether the Government calls Narez at trial, he *is* a Government witness—notwithstanding the Government's repeated assertions that he is not. Simply stated, Narez is one of only two people on Earth (both SLMPD officers) who claim to have seen Lewis commit the crime charged. He is a witness with firsthand knowledge of the crime charged in the indictment—and he will testify at trial.

*Second*, and to that end, the Government appears to overlook the fact that Lewis has a right to subpoena witnesses to testify at trial. And it is beyond settled law that a party may impeach his own witness. *See, e.g.,* Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility").

Moreover, under Federal Rule of Evidence 806, "[w]hen a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or (E)—has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." The record from the suppression hearing, which this Court has already reviewed *de novo*, reveals in no uncertain terms that Narez's hearsay statements were admitted at the suppression hearing over Lewis' repeated and adamant objections and, therefore, Narez's credibility was directly at issue. *See, e.g.,* Evid. Hr. Tr. at 15 ("I learned of it when Officer Narez and his partner made an unrelated, just an

9

everyday traffic stop. *He told me* that they learned of a house near Pennsylvania and Potomac that was involved in narcotic sales relative to that traffic stop") (emphasis added).

As such, Lewis should have had the opportunity at the suppression hearing to impeach Narez's credibility by referencing his participation in a racist and violent group text message exchange in which a group of five SLMPD officers bragged about tasing black people, like Lewis, and forcing them to undergo extreme pain and humiliation for no valid law enforcement purpose— all in violation of federal law. But the Government did not disclose this *Brady* and *Giglio* evidence in advance of the suppression hearing—and Lewis had no way of knowing that Narez had participated in such appalling communications with other officers, at least one of whom is now a convicted felon. This USAO cannot, with a straight face, argue this evidence is probative in a prosecution against former SLMPD officer Boone while arguing this evidence is not even discoverable when a black defendant—targeted on the sidewalk in front of his own home by one of these racist officers willing to violate the rights of suspects and then laugh about it—requests it. That the Government would even attempt to have it both ways is disappointing.

Because Narez is a Government witness, may testify at trial, and because his hearsay statements were introduced over Lewis' objections at the suppression hearing in this case, Lewis is entitled to the text messages by way of discovery to impeach Narez's credibility.

        B.    <u>This Court Should Reject the Government's Claim that the Racist Text Messages are Not Favorable To Lewis</u>

The Government's claim that the racist text messages are not favorable to Lewis is disingenuous at best. Specifically, the Government claims that the text messages "do not prove that the defendant did not commit the crime charged or substantiate any valid defense, nor does it bear on the credibility of any witness." (Doc. 74 at 7).

*First*, the claim that these abhorrent text messages sent and received by Narez over a period

10

of two years do not "bear on the credibility of any witness" is plainly wrong. It cannot reasonably be disputed that cross examination of a witness concerning his bias and prejudices is entirely proper. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) ("A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination") (citing 3A J. Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970); *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

*Second*, this Court should reject the Government's assertion that the text messages "do not prove that the defendant did not commit the crime charged or substantiate any valid defense." (Doc. 74 at 7). As already stated, Narez is one of only two people who claim to have witnessed Lewis in possession of a firearm. That the Government is apparently choosing to call only one of these two witnesses is a transparent attempt to hide from the jury a glaring weakness in its case against Lewis. Racist text messages sent to and from Narez with his fellow SLMPD officers do provide circumstantial proof that Lewis may not have committed the crime he is alleged to have committed and, similarly, provide him with a valid defense. Narez's presence on and participation in the multi-year racist text thread with his fellow officers clearly demonstrates that he does not like people who look like Lewis, that he is willing to ignore his fellow officers' misconduct, that he is willing to violate the law to the detriment of suspects, and that he is willing to target black people for no good reason without regard for their rights. If these text messages do not prove actual innocence, they at least cast reasonable doubt on the Government's case against Lewis.

There is no good reason to keep this favorable evidence out of the hands of Lewis and this Court should compel the Government to turn over the entire 145-page document.

        C.        <u>The Government's Argument that the Text Messages are Not Relevant Should be Rejected</u>

The Government's argument that the text messages are irrelevant to any issue at trial is entirely misplaced. (*See* Doc. 74 at 7-8). As already discussed *supra*, the text messages constitute powerful and proper impeachment evidence and may tend to exculpate Lewis of the crime he is alleged to have committed. As such, they are unambiguously relevant. Furthermore, and quite simply, whether these text messages are relevant is entirely immaterial to whether they are discoverable—which is the only issue before this Court at this time. If the Government sincerely believes that these racist text messages should be excluded from trial, the Government can file a motion in limine arguing this point or make contemporaneous objections at trial for this Court to rule upon. But this has no bearing on whether Lewis has a constitutional right to this evidence to prepare for trial.

And the Government's claim that these text messages occurred long ago is irrelevant. The text message thread covers a period of approximately two years (according to the Government) and the thread allegedly ended roughly two years before Narez arrested Lewis. Perhaps the Government's position is that Narez is no longer racist. But Lewis has certainly not been provided any evidence of his rehabilitation in this regard. Nonetheless, the purported remoteness of the text messages served as no impediment to the Government's eagerness to utilize them at the trial of Dustin Boone only a few months ago in this very courthouse.

        D.        <u>The Government Provides No Authority to Support its Position that a Protective Order is Warranted</u>

The Government asks this Court to enter a protective order to prevent the disclosure of the

12

limited excerpted text messages that have now been provided to Lewis and, if required to provide all the text messages to Lewis, the Government also seeks a protective order. This Court should reject the Government's request for a protective order.

*First*, the Government provides no authority that would support the entry of a protective order because "Officer Narez has a genuine and understandable concern that potential impeachment information relating to him could harm his reputation if not properly handled[.]" (Doc. 74 at 5). This is not a valid ground for a protective order. At risk of stating the obvious, there is no legal authority justifying a protective order on the grounds that evidence of police misconduct and a police officer's racism could cause that officer problems.

While it remains unclear why the Government is concerned about safeguarding the reputation of a racist SLMPD officer who, presumably, continues to patrol the streets of St. Louis, it is far too late to protect Narez's reputation. Indeed, the only reason Lewis became aware of Narez's participation on this text message thread is because it was published in the newspaper which listed Narez by name—and the Government in its prosecution of Dustin Boone listed Narez by name as it sought to utilize this exact same text message exchange in an effort to secure a conviction against Boone. *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1).

The bottom line with respect to the request for a protective order is this: with respect to these text messages, the Government should stop complicating its discovery obligations. These text messages should have been disclosed to Lewis more than one year ago—and, at a minimum, before the suppression hearing when the Government elicited hearsay statements by Narez. The issue before this Court has nothing to do with protective Narez's reputation. Rather, the issue before this Court is about protecting Lewis's constitutional rights and his right to complete discovery in his federal criminal case. Had the *Boone* trial not received the media attention it did,

13

Lewis would have never known about these text messages—but that is not how discovery is supposed to work.

*   *   *   *   *

As it stands, Lewis has been given only portions of 10 pages of a 145-page text message thread between five SLMPD officers who proudly shared stories of humiliating and attacking black people. The defense's review of the 10 pages the Government has turned over reveals that the Government did not even turn over texts that were printed in the news and that were included in Lewis' motion to compel. And the Government's ostensible position that only statements Narez personally wrote in the text messages are potentially discoverable is fatally flawed. While Lewis unquestionably wants to review everything Narez wrote in this despicable text thread, Lewis is also constitutionally entitled to review what others said and what Narez did, or did not do, in response. For example, former Officer Boone wrote:

> Hahaha we made him tell the other officers on scene that he is a pussy! Hahaha he was puking on himself while EMS was looking at him and saying "I'm a pussy, in a pussy." And crying...... it was the greatest moment of my short career! Lol.

*See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1).[2] What did Narez do in response to this shocking confession to a crime by a law enforcement officer? Did he report Boone to Internal Affairs? Did he file a report? Did he laugh? Did he do nothing? Stated simply, Narez's complicity with egregious police misconduct—even when done silently—speaks to his credibility as a witness against Lewis.

These disturbing text messages are discoverable under *Brady* and *Giglio* even in the absence of a request by the defense. They should have been turned over at the outset of this case or, at a minimum, when the Government became aware of them in the context of the *Boone*

---

[2] The Government has not disclosed this text message to Lewis. Lewis was forced to retrieve it from the *Boone* case docket.

14

prosecution.

Until he has an opportunity to review this entire text message thread, Lewis cannot determine whether this evidence is merely impeachment evidence or whether it is exculpatory. However, regardless of which category it falls into: Lewis is constitutionally entitled to review it and the Government has no right to hide it from him. Indeed, undersigned counsel has an obligation to fully investigate this new evidence, to locate any additional missing evidence, to pursue any investigative leads uncovered as a result, and to prepare and file any necessary motions triggered by this previously-undisclosed evidence and any further evidence revealed as a consequence. But until this discovery is produced, undersigned counsel is unable to satisfy his obligation to Lewis.

When this exact evidence was useful in the Government's theory of prosecution of Dustin Boone, the Government argued stridently for its admission. *See United States v. Boone et al.*, 4:18-CR-975-CDP (Doc. 415-1). However, now that this evidence is useful to a criminal defendant in defending against the Government's allegations, the Government is taking the entirely inconsistent position that this evidence is not discoverable. This Court should not tolerate this hypocrisy. Indeed, Lewis is expressly asking this Court to conclude that the Government is judicially estopped from changing course in this manner. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment" (quoting *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993)). The Government has offered no response to this argument—because there is no good response.

One can only wonder why the Government is fighting tooth and nail to hide this racist text message exchange from the defense. If the goal is to protect these five racist SLMPD officers from scrutiny, the Government is on the wrong side of history in 2021 and that is not a valid reason to not disclose it. If the goal is to deprive this criminal defendant of evidence so that he can review it

15

and be able to argue that it is admissible at trial, the Constitution demands that this evidence be delivered into the hands of the accused. And if the goal is to obtain a conviction at all costs—even when the same prosecuting authority is totally inconsistent in two different cases in the courthouse as to the exact same evidence—this Court should see right through this. The bottom line is this: Lewis's goal in requesting this discovery is clear—to protect his constitutional right to a fair trial. When Lewis requested this discovery from the Government, the Government could have and should have simply provided it. The Government's sole interest should have been in fulfilling its discovery obligations and protecting Lewis's constitutional rights in this case. Instead, the Government seems more interested in ensuring Narez is able to continue serving as a police officer with his reputation intact and to prevent the public from learning about the extent of the racism of several current SLMPD officers who continue to arrest, tase, and humiliate people on the streets of St. Louis—and to target them based on their race.

**III.   Conclusion**

Based on the foregoing, Lewis respectfully requests that this Court enter an Order denying the Government's motion for *in camera* review of these text messages and to instead enter an Order requiring the Government to produce a copy of the above-referenced group text message in its entirety along with any other discovery that speaks to Officer Narez's demonstrated bias, motive, eagerness to assault suspects, racism, and/or dishonesty. This should have been disclosed in advance of the suppression hearing but, in any event, needs to be disclosed now so that Lewis can evaluate it, follow up as appropriate, and have the benefit of access to the discovery to mount a defense at trial.

16

Respectfully submitted,

**Margulis Gelfand, LLC**

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND
ATTORNEY FOR DEFENDANT
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by email upon counsel for the United States of America.

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND
ATTORNEY FOR DEFENDANT
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com