UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CR-210-JAR |
| | ) | |
| ROBERT LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO PROHIBIT IMPEACHMENT OF ARRESTING OFFICER WITH TEXT MESSAGES**

Defendant Robert Lewis ("Lewis"), by and through undersigned counsel, respectfully responds in opposition to the Government's motion in limine seeking to prohibit Lewis from impeaching one of the two arresting officers in this case—Officer Christopher Narez ("Narez")—with text messages he exchanged with fellow St. Louis Metropolitan Police Department ("SLMPD") officers. (Doc. 87).

It is well settled that a defendant has a constitutional right to call witnesses during his case-in-chief and, if appropriate, to impeach the credibility of any witness as to bias. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony"); Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility").

**I.      Relevant Background**

On July 8, 2020, a federal grand jury in the Eastern District of Missouri returned a superseding indictment charging Lewis with one count of being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). (Doc. 7). Lewis has entered a plea

of not guilty.

## II. This Court Should Deny the Government's Motion

This opposition boils down to a simple but important premise: a criminal defendant has a constitutional right to call witnesses at trial and a constitutional right to impeach the credibility of any witness who testifies at trial as to the witness's bias. The text messages at issue clearly establish Narez's disdain for people who look like Lewis. Thus, preventing Lewis from impeaching Narez as to his bias would violate Lewis's constitutional rights.

What stands out about the Government's motion in limine is the extent to which the Government implicitly underplays Narez's role in this case. Narez is, by any measure, a central figure. Indeed, based on the discovery, he is one of only two people on Earth who has ever claimed Lewis possessed the firearm at issue on the date at issue in this case. And remarkably, the Government's trial brief and supplemental motions in limine set out the myriad ways Narez was involved. (*See* Doc. 87). For instance, the Government notes Narez was involved in an ongoing investigation concerning a suspected "drug house" and the Government itself argues that law enforcement's investigation of this drug house is relevant and admissible at trial. (*Id*. at 1). The Government notes Narez was on patrol with several SLMPD officers the evening of Lewis' arrest. (*Id.* at 1). The Government explains that Narez and three other SLMPD officers approached Lewis as he stood on the street. (*Id.* at 2). The Government asserts that Lewis allegedly ran from the officers and that Narez and Officer McCool pursued him. (*Id.*). The Government contends that McCool and Narez eventually caught up to Lewis and that McCool administered a "drive stun" with his taser which allegedly caused Lewis to throw a firearm. (*Id.*). Stated succinctly, the Government's trial brief and the discovery disclosed in this case reveal that Narez and McCool are the only two people on Earth who claim to have witnessed Lewis commit the crime charged in the

2

pending indictment.

However, according to its trial brief, the Government intends to call only one witness who allegedly saw Lewis commit the crime charged in the superseding indictment: Officer McCool. (*Id.*). The Government explains that it opted not to call Narez as a witness at the suppression hearing before this Court and, without explanation, the trial brief makes clear that the Government similarly does not intend to call Narez as a witness at trial. (*Id.*) The Government's strategic decision in not calling Narez as a witness appears to be based on the misplaced belief that the Government's *Giglio* obligations do not attach if the Government chooses not to call him as a witness in its case-in-chief. But setting aside the discovery dispute as to that issue to which Lewis in no way waives his constitutional rights, the fact remains that Narez is both a fact witness and a Government witness—regardless of whether it is the prosecution or the defense who calls this police officer who arrested Lewis at trial.

If the Government does not call Narez in its case-in-chief, Lewis has every right to call him as a witness. However, the Government is flat-out wrong that Lewis is calling Narez "for the sole purpose of impeaching him with hearsay statements contained within a text message thread[.]" (*Id.*). To the contrary, Lewis has every right to call Narez, one of the two SLMPD officers who tackled him, tased him, and claims to have witnessed him in possession of a firearm, as a relevant fact witness—especially where, as here, the Government is going to great lengths to hide Narez from the jury.

Narez is an eyewitness to an alleged crime to which Lewis has pled not guilty. Depending on what Narez says at trial regardless of which side elicits his testimony, there may be no need for Lewis to impeach his credibility. At this point, Lewis is left to speculate as to why the Government would not want the jury to hear the testimony of this critical eyewitness. The defense has never

3

had the opportunity to speak with Narez, but due process provides Lewis the opportunity to compel his testimony at trial and to impeach his credibility if his testimony tends to inculpate him.

To be clear, what the Government is seeking to prevent is impeachment based on the fact that Narez was an active participant on a several-months' long text message chain with several SLMPD colleagues in which the officers exchanged tales of police misconduct, made racist statements about people who look like Lewis, and demonstrated a callous disregard for the law and their code of ethics as law enforcement officers. This may be the only reason the Government does not intend to call Narez as a witness at trial. But that prosecutorial decision does not insulate Narez from testifying. Thus, the Government's motion seems to suggest that Lewis should have the right to call Narez but not to impeach his credibility as to bias despite constitutional authority to the contrary and the Federal Rules of Evidence permitting Lewis to do so.

It is important for this Court not to lose sight of the fact that the Government never disclosed the text messages to Lewis but Lewis became aware of Narez's involvement thanks to comprehensive news coverage of the recent prosecution of former SLMPD Officer Dustin Boone who was convicted, following a jury trial prosecuted by the United States Attorney's Office for the Eastern District of Missouri (the "USAO"), of depriving an individual of his constitutional rights. *See United States v. Boone et al.*, 4:18-CR-975-CDP (E.D. Mo.). This is remarkable because the Government's motion in limine now pending before this Court advances the opposite position the same USAO took in the *Boone* prosecution with respect to the same text messages. In *Boone*, the USAO argued that these very same text messages are both direct evidence of a police officer's intentional violation of a suspect's constitutional rights and are "probative of his intent and motive to assault protesters and are against his code of ethics as a law enforcement officer," are admissible to show "animosity towards African American[s]," and are admissible to show that the SLMPD

4

officer's actions "were not as the result of mistake or accident." *See United States v. Boone et al.*, 4:18-CR-975-CDP (E.D. Mo.) (Doc. 415-1).[1] Yet now, all of a sudden, the USAO argues that these text messages should be excluded by this Court based on a finding that they have no relevance. A brief review of the public docket in *Boone* reveals the Government has not reversed course for purposes of that case by confessing error in its position as to this very issue.

The Government now seeks an Order from this Court prohibiting Lewis from using the handful of text messages it disclosed to the defense to impeach the credibility of Narez after having used these text messages in their case-in-chief to prosecute Narez's former colleague. And the Government's only argument in support of its motion is that these text messages are somehow not relevant because they predate the arrest of Lewis by two years. This Court should reject this argument.

The Government argues the racist text messages are not relevant under Federal Rules of Evidence 401 and 402. (Doc. 87 at 4). But the Supreme Court has spoken forcefully on multiple occasions about the relevance and admissibility of this type of evidence.

In *Abel*, 469 U.S. at 50-51, the Supreme Court explained:

> Rule 401 defines as "relevant evidence" evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by the United States Constitution, by Act of Congress, or by applicable rule. *A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony.*

(emphasis added). The Court continued, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess

---

[1] The Government's analysis under Federal Rule of Evidence 404(b) necessarily presumes the evidence is otherwise relevant. *See* Fed. R. Evid. 401 and 402.

5

all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.* at 52. And nearly 50 years ago, the Court held, "[t]he partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)). This overwhelming body of legal authority does not turn on which side calls the witness—and for good reason. The very heart of due process gives both sides equal opportunity to call witnesses and Federal Rule of Evidence 607 anticipates possible gamesmanship by expressly permitting that "[a]ny party, including the party that called the witness, may attack the witness's credibility").

Ignoring this binding precedent, the Government directs this Court to decisions of various circuit courts and argues that the text messages are not relevant to an element of the offense charged. (*See* Doc. 87 at 5). But that is not the test where, as here, evidence can be relevant for purposes of impeachment. *See Abel*, 469 U.S. at 50-51 ("A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony").

That said, even under the Government's narrow and inaccurate formulation of admissibility, the text messages are unambiguously relevant. Specifically, an element of this offense is whether Lewis possessed a particular firearm on or about a particular day. Narez has relevant testimony concerning this essential element because, according to the police reports disclosed in discovery, Narez was there. And the Government correctly notes, "[r]elevant evidence tends to make a necessary element of an offense more or less probable." (Doc. 87 at 5) (quoting *United States v. Henthorn*, 864 F.3d 1241, 1249 (10th Cir. 2017)). Here, if Narez testifies that he never saw Lewis with a gun, smart money says Lewis will not impeach Narez's credibility. If,

6

however, Narez testifies that he did see Lewis with a gun (a necessary element of the offense charged), allowing impeachment based on Narez's bias is constitutionally required. To that end, the impeachment evidence the Government seeks to exclude is relevant as it "tends to make a necessary element of an offense more or less probable" because a reasonable jury could conclude based on that evidence that Narez is biased against Lewis because of his race and that Narez would be willing to participate in and/or look past police misconduct perpetrated against suspects. *Henthorn*, 864 F.3d at 1249.

Finally, without expressly objecting on Federal Rule of Evidence 403 grounds, the Government broadly hints that the text messages are unfairly prejudicial and, therefore, are inadmissible—but the Government does not articulate why. (Doc. 87 at 7). The Government suggests that "no evidence has been brought before this Court that would indicate racism played a role in this investigation generally, or Defendant's arrest specifically." (*Id.*). But this argument is circular. In fact, the Government is curiously asking this Court to exclude evidence of racism based on the fictional premise that there is no evidence of racism. And, when Narez received the following text message from his former colleague Dustin Boone, he did not report Boone to Internal Affairs or express any disapproval whatsoever:

> Dude caught a tampering 1st, resisting, stealing of a motor vehicle out of the county and a TASER to the fuckin dome? Other one was just a body shot. Caught him in some THICK over grow in a side vacant lot, there was nobody around except me. Shaw, shithead and god... he is at the hospital now... poor guy.

*See United States v. Boone et al.*, 4:18-CR-975- CDP (Doc. 415-1).[2] And Dustin Boone bragged to Narez and his fellow officers, "Hahaha we made him tell the other officers on scene that he is a pussy! Hahaha he was puking on himself while EMS was looking at him and saying 'I'm a pussy,

---

[2] This text message is not subject to this Court's protective order. This is cited in the publicly-available Government pleading in *Boone* and, to this day, the Government has not disclosed this text message to the defense in this case. That pleading identified Narez by name as one of the recipients of these particular text messages.

7

in a pussy.' And crying...... it was the greatest moment of my short career! Lol." (*See id*.). Narez had no problem with this.

In the case now pending before this Court, two police officers arrested a black man on the streets of St. Louis and allege that he ran from them, fell to the ground hiding his hands under his torso, thereby causing the officers to electrocute him with a taser and thereby causing him to allegedly toss a firearm. The Government intends to call one of them as a witness at trial. But the other officer is a witness with relevant testimony. The Government cannot challenge the premise that Narez has relevant testimony to offer. Thus, the only question is whether this Court can constitutionally enter an order preventing the defense from impeaching Narez's credibility depending on his testimony. The Supreme Court has resolved this question: "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Abel*, 469 U.S. at 52; *see also* Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility").

### III. Conclusion

Based on the foregoing, Lewis respectfully requests that this Court deny the Government's motion in limine to prohibit him from using relevant and admissible text messages involving Narez at trial, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ATTORNEY FOR DEFENDANT

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney and all other counsel in this case.

>*/s/ Justin K. Gelfand*
>JUSTIN K. GELFAND, #62265
>7700 Bonhomme Ave., Ste. 750
>St. Louis, MO 63105
>Telephone: 314.390.0234
>Facsimile: 314.485.2264
>justin@margulisgelfand.com
>ATTORNEY FOR DEFENDANT